# In the United States District Court
## for the
## Western District of Texas

| | |
|---|---|
| JUAN T. JONES,<br>TDCJ-CID NO. 1334510 § | § |
| | § |
| Petitioner, | § |
| | §   Civil Action No. SA-09-CA-008-XR |
| v. | § |
| | § |
| NATHANIEL QUARTERMAN,<br>Director, TDCJ-CID | § |
| | § |
| Respondent | § |

## ORDER

On this date the Court considered Petitioner's application for writ of habeas corpus. Petitioner raises three issues in his petition – whether there was legally sufficient evidence to support the conviction, whether his right to speedy trial was violated, and whether his trial counsel was ineffective. The Magistrate Judge recommended that the Court dismiss the petition. *See* Docket No.19. Plaintiff has objected. After due consideration, the Court will deny the petition.

## I. Background

On November 9, 2003, there was an armed robbery at a Hampton Inn. Raymondo Neri testified at trial that he was working as the front desk clerk on the night of November 9 at about 9:30 p.m. He heard the door open abruptly and saw a person running toward the front desk wearing what seemed to be stockings on his head. The person jumped over the front desk and pointed a gun at him, pulling him down to the floor. The person told Neri not to scream or that he would kill him, and then said, "Where is the money?" Neri gave him the money tray and told him that he could give

him the money from the "back bank." The person dragged Neri to the back, keeping the gun to his head, and then threw him on the floor. Neri tried to open the back bank, but told the person that he needed the key. At that time, a second person came through the back, and Neri told him where the key was. This second person got the key and gave it to Neri. Neri retrieved the tray, or register till, which was bluish-grayish aluminum, and gave it to him. After telling the individuals that the video system was not working, Neri was taken to the bathroom near the front desk and told to lie on the floor. One individual told Neri not to turn or he would shoot him. The robbers then left. Neri never saw their faces and could not identify them.

Ray Soriano, an eyewitness who was in the hotel lobby watching football, testified that he heard tires squeal and a white Camaro pulled up. The robbers fled in the vehicle. Neri testified that one of the money trays was taken, but one was left behind. Police later stopped a white Camaro in which Petitioner Juan T. Jones was a passenger. Jones was arrested. An evidence technician found partial legs of black panty hose, a money tray/drawer, and cash and coins in the car. At trial, Neri testified that the tray found in the Camaro was the back tray from the hotel.

On December 11, 2003, the state trial court appointed George Shaffer to represent Jones. On February 3, 2004, the grand jury delivered a bill of indictment on the charge of aggravated robbery with a deadly weapon. On June 21, 2004, attorney George Shaffer moved to withdraw, stating that "Defendant has indicated that he desires to try this matter before a jury," that "Defendant has been dissatisfied with the representation provided to date by the undersigned" and "[i]t is no longer tenable for said attorney to continue to properly represent Defendant." Clerk's Record at 108. The court permitted Shaffer's withdrawal on June 22 and appointed Lisa Jarrett to represent Jones. Jarrett filed numerous motions on Jones's behalf, including an August 5, 2005 motion for speedy

trial. In that motion, Jones argued that he would be prejudiced if trial were not held before the scheduled October 5, 2005 trial date because his counsel would be unable to locate witnesses and co-defendants.

On September 7, 2005, Jones filed a "Writ of Habeas Corpus Motion to Set Aside Indictment for Failure to Afford Constitutional Right to Speedy Trial." C.R. 226. Therein, he stated that he was originally set for jury trial on January 3, 2005, that he had sent a personal letter to the trial judge on July 1, 2005 asking for a jury trial on his scheduled date of July 27, 2005, and that his attorney had filed a motion for speedy trial on August 5, 2005. Jones asserted that his ability to present an adequate defense had been diminished and that his witnesses' memory was diminished or lost, and that he had lost access to witnesses who would be expected to testify on his behalf.

Jones's jury trial began on October 18, 2005, and the jury rendered a guilty verdict on October 21. The jury found that the enhancement allegation that Jones was a habitual offender to be true, and on October 25, he was sentenced to 99 years. Also on October 25, Jones was heard on his speedy trial motion. Jones was the only witness.

On October 25, 2005, Jones filed a notice of appeal to the Texas Fourth Court of Appeals, case number 4-05-00777-CR. Jones raised four issues on appeal: legal insufficiency, factual insufficiency, the right to a speedy trial, and a violation of Texas Code of Criminal Procedure article 36.01 regarding enhancement procedure. The Fourth Court affirmed Jones's conviction on January 31, 2007 in an unpublished opinion. *Jones v. State*, 2007 WL 246876, at *7. The Fourth Court concluded that the evidence was factually and legally sufficient to support the jury's verdict of guilty, that Jones's right to a speedy trial was not violated, and that there was no violation of article 36.01.

Jones then filed a *pro se* petition for discretionary review with the Texas Court of Criminal

Appeals, in which he asserted his speedy trial and insufficient evidence arguments. The petition for discretionary review was refused on August 22, 2007. *Jones v. State*, No. PD-0242-07 (Tex. Crim. App.)

Jones filed a state application for writ of habeas corpus on June 30, 2008. He asserted that his trial attorney was ineffective in failing to get a hearing on the motion for speedy trial filed on August 5, 2005 and in failing to use the witness statements, sworn affidavits, depositions and interrogatories to impeach the State's witnesses, who gave contradictory testimony. Jones argued that he had a viable speedy trial claim, that the failure to have the speedy trial motion heard rested solely on his trial counsel, that the failure to get a hearing on the speedy trial motion prevented him from appealing any ruling that would have been made by the district court, and that prejudice should be presumed. Jones further argued that his trial counsel did not effectively cross-examine the State's witnesses. Specifically, he noted that Soriano's initial description of the get-away vehicle was a mid-80s, white Camaro with a spoiler fin on the trunk and possibly chrome wheels, but then stated at trial that the car had "primer or something" on it. He further asserted that Officer Henry committed perjury, and that the victim, Ray Neri, stated that he gave the robber the money tray/till, but a cash drawer (as opposed to the tray within) was found in the car.

On July 23, 2009, the trial court ordered Jones's trial attorney to file an affidavit concerning the ineffective assistance of counsel claims. In her affidavit, Jarrett stated that she was not appointed as Jones's attorney until June 22, 2004, that she and Jones were waiting for depositions and interrogatories from Jones's federal court civil rights case against the arresting officers to properly prepare for trial, that Magistrate Judge Primomo granted leave to take depositions in the federal case on April 5, 2005, and that after receiving the depositions, the motion for speedy trial was filed on

August 5, 2005. She further attested that on October 7, 2005, the next court date for Jones, the Court was unable to reach the case and placed Jones on a special setting for October 18, 2005, when trial commenced. Jarrett stated that no hearing was necessary on the speedy trial motion because the court granted Jones a speedy trial insofar as trial commenced "a mere two months" from the filing of the speedy trial motion. Jarrett stated that although Jones was "frustrated," she never saw "any anxiety or distress," and that she was unaware of any witness that Jones requested that was unavailable due to the delay, and that the delay actually aided the defense "by the inconsistent statements in the State's witnesses due to their loss of memory due to the passage of time." Jarrett further stated that she questioned Soriano on the stand regarding his change in testimony, but the jury found him credible despite the conflicting testimony, that other witnesses corroborated Soriano's testimony that Jones was a participant in the robbery, and that items taken from the hotel as well as clothes matching the robbers' description were found in the car from which Jones fled. Jarrett also stated that she used all witness statements to cross-examine witnesses insofar as she was permitted, noting that the State's objections were sustained with regard to attempts to cross examine officers based on the federal civil rights case. Jarrett also states that she used police reports and witness statements to cross examine, but could not introduce them into evidence under the rules of evidence.

The state habeas trial court issued written findings on September 29, 2008. The court reviewed the Fourth Court's decision on appeal, as well as Jarrett's affidavit, and concluded that Jarrett's affidavit was credible and that her representation did not fall below an objective standard of reasonableness. In addition, the court concluded that Jarrett's performance did not affect the ultimate outcome of the proceedings. It noted that the "lack of persistence" weighed against Jones in the speedy trial determination on appeal, but it was not the deciding factor, and thus Jones had not

shown that there was a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. The state habeas application was denied by the Court of Criminal Appeals on November 19, 2008, without written order on findings of the trial court and without a hearing.

On January 5, 2009, Jones initiated proceedings in this Court, filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, with memorandum in support. Docket No. 2. In his habeas petition, Jones, acting *pro se*, argues that the evidence was legally insufficient to sustain a finding of guilt, that he was denied his constitutional right to a speedy trial, and that his trial counsel was ineffective when she failed to obtain a hearing on a speedy trial motion and cross-examine witnesses with their prior statements. *Id.* The Magistrate Judge recommends that Plaintiff's petition for writ of habeas corpus be dismissed. Plaintiff submitted objections to the Magistrate Judge's recommendations, and the Court now reviews the Magistrate Judge's recommendation and Plaintiff's objections.

## II. Standard of Review

The Court must conduct a *de novo* review of any of the Magistrate Judge's conclusions that Plaintiff has specifically objected to. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Jones has objected to all of the recommendations, so the Court will conduct a *de novo* review of the issues, meaning that the Magistrate Judge's conclusions and recommendations are not entitled to any deference. However, the Court must apply the standard of review mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

AEDPA prohibits a federal court from granting habeas corpus relief with respect to a claim

that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The state court's decision is contrary to the Supreme Court's clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result]." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotations and citations omitted). The state court's decision is an unreasonable application of the Supreme Court's clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotations and citations omitted).

### III. Analysis

#### A. Exhaustion

Under § 2254(b)(1), a defendant must exhaust available remedies in state court prior to requesting federal collateral relief. "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest [state] court." *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). Such presentment can take place via direct appeal or state habeas proceedings. *Orman v. Cain*, 228 F.3d 616, 620 (5th Cir. 2000).

Respondent "admits that Jones has sufficiently exhausted his state court remedies . . . [and] . . . that the petition is not successive or barred by the AEDPA statute of limitations." Docket No. 15 at 5. However, the Magistrate Judge suggests that "an argument can be made that Jones has not

properly exhausted his sufficiency of the evidence and speedy trial claims; although Jones raised both issues previously in state court, it does not appear he raised them in his state habeas application." Docket No. 19 at 9. The Magistrate Judge concludes that " to the extent Jones did not properly exhaust his sufficiency of the evidence and speedy trial claims, those claims should be summarily dismissed." *Id.* Jones objects, arguing that he exhausted these points on direct appeal.

In *Myers v. Collins*, 919 F.2d 1074 (5th Cir. 1990), the Fifth Circuit rejected the State's argument that a habeas petitioner must seek state habeas relief in addition to fully exhausting his direct appeal. It noted its precedent holding that a Texas prisoner satisfies the exhaustion requirement and may properly seek federal habeas relief if he raised his claim with the Texas Court of Criminal Appeals *either* in a petition for discretionary review *or* in an application for writ of habeas corpus. *Id.* at 1076. It emphasized that "[a]t no time have we suggested that both avenues of relief must be pursued in order to satisfy the exhaustion requirement." *Id.* When the petitioner presents his claim to the Texas Court of Criminal Appeals after obtaining review by an intermediate appellate court, it would usually be fair to assume that further state proceedings concerning those alleged grounds would be useless, and petitioners will not be required to file futile repetitive efforts in the state courts in order to satisfy the exhaustion doctrine. *Id.* Thus, for exhaustion purposes, the issues in a habeas petition may have been presented to the highest state court on direct appeal or in a state post-conviction proceeding; either is sufficient and both are not required. *Bledsue v. Johnson*, 188 F.3d 250, 254 n.8 (5th Cir. 1999); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990); *see also Jackson v. Dretke*, 450 F.3d 614, 616 n.2 (5th Cir. 2005) (citing Hertz & Liebman, Federal Habeas Corpus Practice & Procedure § 23.3(b)).

As noted, Jones filed a direct appeal to the Fourth Court of Appeals that raised the legal

insufficiency and denial of the right to a speedy trial issues. After the Fourth Court affirmed Jones's conviction in an unpublished Memorandum Opinion, Jones filed a *pro se* Petition for Discretionary Review with the Texas Court of Criminal Appeals on June 20, 2007, against asserting his legal sufficiency and speedy trial claims. The Court of Criminal Appeals refused the Petition for Discretionary Review on August 22, 2007. *Jones v. State*, No. PD-0242-07 (Tex. Crim. App.). "The exhaustion requirement is satisfied, however, even if the highest state court exercises discretion not to review the case or does not discuss the federal issue." 17B FED. PRAC. & PRO. § 4264.1. Thus, Jones fully pursued his speedy trial and legal sufficiency claims through direct appeal, and exhausted his state remedies as to these issues, as conceded by the State.[1] Accordingly, the Court does not accept the recommendation to summarily dismiss these claims.

## B. Legal Sufficiency of the Evidence

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). On federal habeas review, the standard for reviewing the sufficiency of the evidence is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). Courts must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. This inquiry does not require a court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt; instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

_____

[1] Because these issues were not presented in Jones's state habeas petition, the appropriate state court decision for review is the Fourth Court of Appeals' decision on direct review. *See Jackson*, 450 F.3d at 616 n.2.

*Id.* at 319. All credibility choices and conflicting inferences are to be resolved in favor of the verdict. *United States v. Cyprian*, 197 F. 3d 736, 740 (5th Cir. 1999).

Jones's legally sufficiency argument was considered on direct appeal. Jones asserted that "the evidence is insufficient to prove that he was one of the perpetrators, and even assuming he was one of the perpetrators, there is insufficient evidence to show he was criminally responsible for the aggravating element of the offense." 2007 WL 246876. The jury was charged that "a person commits the offense of robbery if, in the course of committing theft, as defined hereinafter, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and "[a] person commits aggravated robbery if the person commits a robbery, as defined above, and uses or exhibits a deadly weapon." The jury was also charged on the law of parties as follows: "Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense. Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, or attempts to aid the other person to commit the offense."

The Fourth Court went through the evidence introduced at trial and concluded that, although there may have been "some discrepancies," the evidence was legally sufficient to support the conviction. Specifically, the Fourth Court relied on the testimony of Ray Neri, Jerry Soriano, and Officers Vidal and Saulter. The court noted that Jones's clothing was consistent with the clothing worn by the robbers and the vehicle in which he was stopped was consistent with the description of

10

the getaway car by the eye-witness Soriano. The court also noted that Jones had allegedly fled from the vehicle when it was stopped, and that after Jones was apprehended from the vehicle that matched the description given by Soriano, a crime scene technician found a black bandana and partial legs of black panty hose, a money drawer, and coins in the vehicle. The court concluded that the flight and possession of the stolen property permitted an inference of guilt.

In conducting its review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir.1993) (citation omitted).

Jones argues that because he was never identified as a perpetrator or found with a weapon, and because there was no fingerprint or DNA evidence to tie him to the crime, there was legally insufficient evidence to sustain a finding of guilt. Jones contends that the eye witnesses did not identify him, giving only "sketchy descriptions" of the perpetrators without providing facial features. Jones notes that he was wearing an orange shirt when booked, not dark clothing, and that the dark clothing worn by the perpetrators was not found. Jones argues that the money drawer found in the vehicle must have been placed there by the police because Neri's testimony was that the money tray/till was taken from the drawer, and the drawer itself was not taken. Jones also asserts that he did not flee, and that the officer told this lie to justify beating him. Jones emphasizes these inconsistencies in the evidence, but notes that his real argument is that there was legally insufficient evidence that he threatened and placed another in fear of imminent bodily injury or death or used or exhibited a deadly weapon. Jones argues that the State failed to prove that he was criminally

responsible for the aggravating element (the use or exhibition of a deadly weapon) because there was no evidence that he knew that a gun was used or even in the possession of the robbers. Jones contends he cannot be found guilty as a participant because there is no evidence that he solicited, encouraged, directed, aided, or attempted to aid anyone in the commission of this crime, arguing that the State must prove "petitioner gave someone a weapon to rob Mr. Neri."

In determining whether the accused acted as a party, the jury may consider events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and a common design to commit the prohibited act. *Payne v. State*, 194 S.W.3d 689, 694 (Tex.App.–Houston [14th Dist.] 2006, pet. ref'd); *see also Coleman v. State*, 956 S.W.2d 98, 99-100, 103 (Tex.App.–Tyler 1997, pet. ref'd). Circumstantial evidence may be sufficient to establish a defendant's guilt as a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App.2006). The evidence creates a reasonable inference that Jones participated in the aggravated robbery of the hotel. The evidence found in the car, as well as the description of the vehicle, and the suspects' flight, is sufficient for a reasonable jury to conclude that the three men apprehended in the vehicle were the two robbers and the driver of the get-away car. There was sufficient evidence for the jury to conclude that Jones was one of the robbers who entered the Hampton Inn. Officer Saulter testified that, when he attempted to stop the vehicle, the vehicle did not immediately stop, but when it eventually did, Jones exited from the back seat. This indicates that Jones was not the driver of the getaway vehicle. Saulter testified that Jones ran, and that he pursued and apprehended him.[2] Highly incriminating evidence, including the money drawer identified by

_____

[2] Even though Jones asserts that he was wearing an orange shirt, which did not match the description of the robbers, he could have been wearing a jacket during the robbery. Neri testified

Neri as coming from the hotel, was found in the vehicle. There is sufficient evidence for a reasonable jury to find that Jones was either the robber who brandished the weapon, which is sufficient for an aggravated robbery conviction, or that he participated in getting the keys to open the back safe and in forcing Neri into the bathroom at gunpoint. The evidence is sufficient to show that the second robber was a participant and intended to aid in the commission of the aggravated robbery, as he continued to actively participate in the robbery knowing that a deadly weapon was involved. *See Crutcher v. State*, 969 S.W.2d 543, 546 (Tex. App.–Texarkana 1998, pet. ref'd) ("It is sufficient for a deadly weapon finding against a party to an offense if the proof shows that, during the course of an offense, it was apparent to the party that a deadly weapon was being used or was about to be used and that party continues to participate in the commission of that offense."). Texas law does not require that the party knew before the offense commenced that a deadly weapon would be used, nor does it require that the party provide the weapon, as Jones argues. Thus, Jones has failed to show that a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt.[3]

---

that one of the robbers was wearing a jacket, and a black leather jacket was found in the Camaro.

[3] Jones notes that his primary argument is that there is insufficient evidence to convict him as a party to aggravated robbery, noting that the State must prove that he was criminally responsible for the aggravating element – use of a deadly weapon. Texas courts hold that "[t]o convict a defendant as a party to the offense of aggravated robbery involving the use or exhibition of a deadly weapon, a firearm, the State must prove that the defendant was criminally responsible for the primary actor's use or exhibition of a firearm during the commission of the offenses." *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986). Jones argues that there is no evidence that he knew a gun would be used or that he used or exhibited a deadly weapon. Jones relies on *Wooden v. State*, 101 S.W.3d 542 (Tex. App.–Fort Worth 2003, pet. ref'd), in which the court held that there was legally insufficient evidence to support the conviction when there was no evidence that the defendant knew the gun was in the car or that he aided or encouraged the other passenger to threaten the victim with a gun.

## C. Speedy Trial Claim

Jones was arrested on November 9, 2003, but did not start his trial until October 18, 2005. Jones argues that he was deprived of his constitutional right to a speedy trial because he was prejudiced by the nearly two-year delay in bringing his case to trial.

The Sixth Amendment to the United States Constitution guarantees every defendant in a criminal case the right to a speedy trial. U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 519-22 (1972). The Supreme Court identified four factors that courts should assess in determining whether a particular defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether he has been prejudiced by the delay. *Barker*, 407 U.S. at 530.

The courts first look to the length of delay because "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing

---

To the extent Jones is implying that he was just the driver of the get-away car and did not learn of the use of a firearm until after the fact, there is a lack of direct evidence that the driver knew that a gun would be used. It is questionable whether the circumstantial evidence would support a finding that the driver was criminally responsible for the aggravating element, though some Texas courts have held that simply driving the getaway vehicle may constitute participation in the offense of aggravated robbery sufficient for liability as a party. *See Johnson v. State*, 6 S.W.3d 709, 711 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd) ("While [defendant] did not rob the store with the two men, she can still be criminally responsible for their criminal conduct if she intentionally assisted the commission of the offense by aiding or attempting to aid the two men" and "there was ample evidence for the jury to find beyond a reasonable doubt that appellant intended to aid in the commission of the aggravated robbery, either by performing a reconnaissance of the robbery location or by driving the getaway car, or both."); *Brewer v. State*, 852 S.W.2d 643, 647-48 (Tex. App.–Dallas 1993, pet. ref'd) ("evidence that a defendant drove the getaway car after a robbery has been held sufficient to convict the driver as a party to the offense"); *Webber v. State*, 757 S.W.2d 51 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd).

The Court need not reach this issue, however, because it has already concluded that the evidence was legally sufficient for the jury to conclude that Jones was one of the robbers who entered the hotel.

ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). The starting point for measuring the length of the delay is arrest or indictment, whichever comes first. *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982); *United States v. Serna-Villarreal*, 352 F. 3d 225, 232 (5th Cir. 2003). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The Fifth Circuit has held that, "[i]f the delay reaches the threshold level of one year, it is 'presumptively prejudicial' and requires the court to engage in the speedy trial analysis, balancing the remaining factors." *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002); *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009).

If the Court finds a presumptively prejudicial delay, it then weighs "the length of the delay, the reason for the delay, and defendant's diligence in asserting his or her rights ... against the prejudice to the defendant." *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002); *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). Obviously, in this balancing, the less prejudice a defendant experiences, the less likely it is that a denial of a speedy trial right will be found. *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009).

The Sixth Amendment's Speedy Trial Clause is concerned with three types of prejudice: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654. Ordinarily, the burden of demonstrating prejudice rests on the defendant. A defendant can be relieved from bearing this burden in circumstances where the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is to be presumed. *Serna-Villarreal*, 352 F.3d at 231.

**1. Length of Delay**

Consistent with Fifth Circuit precedent, the Fourth Court of Appeals found the twenty-three month delay between Jones's arrest and the commencement of his trial to be "presumptively prejudicial." However, this finding means only that the length of delay is sufficient to trigger the *Barker* balancing analysis. *See Molino-Solorio*, 577 F.3d at 305 ("After determining that the length of delay is presumptively prejudicial, we consider it again 'as one factor among several.'").[4]

The length of delay in this case, which is less than two years, does not weigh heavily in Jones's favor, and prejudice will not be presumed based on the length of delay alone. *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (holding that delay of three years, nine months does not weigh heavily in favor of defendant).

**2. Reason for the Delay**

After concluding that the length of the delay was sufficient to trigger the *Barker* analysis, the Fourth Court then considered the reason for the delay. The Fourth Court concluded that because the record was silent as to the reasons for a majority of the delays, the delay would be weighed against the state, but less heavily because there was no evidence that the state attempted to deliberately delay the trial. As the Magistrate Judge correctly noted, this determination was not contrary to, or an

---

[4] Jones appears to believe that the Fourth Court's finding that the delay was presumptively prejudicial automatically entitles him to a presumption of prejudice in the balancing test. However, the Fifth Circuit holds that, generally, the delay must be at least five years to presume prejudice and relieve the defendant of meeting his burden. *United States v. Parker*, 505 F.3d 323, 328-29 (5th Cir. 2007) ("We have held that delays of less than five years are not enough, by duration alone, to presume prejudice."); *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) ("[T]his Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years.").

unreasonable application of, federal law.[5]  As explained by the Fifth Circuit in *Serna-Villarreal*:

> the Supreme Court has held that if the government diligently pursues a defendant from indictment to arrest, prejudice will never be presumed.  In contrast, if the government acts in bad faith, *i.e.*, intentionally holds back in its prosecution of the defendant to gain some impermissible advantage at trial, the delay will weigh heavily in favor of the defendant.  If a case involves neither diligent prosecution nor bad faith delay but instead official negligence, the case occupies a "middle ground" where the weight assigned to the factor increases as the length of the delay increases.  A court's "toleration of such negligence varies inversely with its protractedness."

352 F.3d at 232.

Without evidence of bad faith, this case falls in the middle ground, where "the weight assigned to the factor increases as the length of the delay increases."[6]  Thus, given that the delay was less than two years, this factor weighs against the State, but not heavily.  *See id.* (concluding that a delay of three years and nine months caused by official negligence rather than bad faith was not

---

[5] The Magistrate Judge also noted that additional factfinding by the state habeas court showed that trial counsel had been appointed after Jones developed a conflict with his first lawyer, and thus the period between November 10, 2003 and June 11, 2004 were not counted against the state or weighed heavily against the state.  Jones concedes that "this is true," but argues that "the state was still 13 months away from trying petitioner."  Objections at 10.

[6] Relying on state-court cases, Jones argues that when the State offers no reason to justify the delay, this factor weighs in favor of finding a violation of the speedy trial right.  Objections at 10 (citing *Shaw v. State*, 117 S.W.3d 883 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.2d 308, 314 (Tex. Crim. App. 2003)).  In *Shaw*, the Texas Court of Criminal Appeals held that the State has the burden of justifying the delay and concluded that an unjustified delay weighed in favor of the defendant, although not heavily.  *Id.* at 890.  In *Dragoo*, the Court of Criminal Appeals noted that the State offered the trial court no reason to justify the delay, and thus the factor weighed in favor of finding a speedy trial violation, but did not weigh heavily in favor of such a finding.  96 S.W.3d at 314 ("In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay.").  This is consistent with the Fourth Court's decision in this case – the court found that the delay would be weighed against the State, but not heavily.  Jones argues that the delay should be weighed heavily against the State, but has provided no factual or legal basis for this conclusion.

sufficient to presume prejudice).[7]

### 3. Assertion of the Right

In applying the third *Barker* factor, the Fourth Court found that Jones's assertion of his right to speedy trial was lacking, and that therefore this factor weighed against Jones. *Jones v. State*, 2007 WL 246876 at *4. Specifically, the Fourth Court noted that Jones did not obtain a hearing on his speedy trial request until after the jury found him guilty and the State had rested in the punishment phase of the trial, and concluded that "defendant was attempting to obtain a dismissal rather than a prompt trial." *Id.*

Under the third factor, the "defendant's assertion of his speedy trial right" receives "strong evidentiary weight," while "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Molino-Solorio*, 577 F.3d at 306 (quoting *Barker*, 407 U.S. at 531-32). "Mere assertion" of the right does not automatically cause this factor to weigh in a defendant's favor, and a defendant who waits too long to assert his right will have his silence

---

[7] Jones objects to the Magistrate Judge's reliance on Jarrett's affidavit stating that she was awaiting discovery in the civil suit. The Magistrate Judge concluded that because Jarrett was waiting for discovery, which she received on August 5, 2005, the "state court's determination that the delay before August 5, 2005 should not be weighed against the state or weighed heavily against the state is not contrary to or an unreasonable application of federal law." Jones argues that Jarrett's affidavit was a "blatant lie" insofar as "the affidavits and interrogatories were filed on August 17th & 30th 2004" and "[b]esides this fact the trial attorney refused to use any of this evidence." Objections at 10. The Court notes, however, that the Fourth Court did not determine that the delay before August 5, 2005 should not be weighed against the State. Rather, the Fourth Court noted only that, other than the second reset following a change in Jones's counsel, the remaining five resets did not indicate the reason, and thus the delay weighed against the State. The Court therefore need not address whether the delay before August 5, 2005 should be counted against the State, since the Fourth Court did not make such a finding.

weighed against him. *Id.*[8] The court must assess the totality of the proceedings in considering the amount of time that passed before a defendant should have raised his speedy trial rights. *Id.*; *United States v. Parker*, 505 F.3d 323, 330 (5th Cir. 2007).

Jones was arrested on November 9, 2003 and he was tried on October 18, 2005. He asserts that the record clearly shows that he was seeking a speedy trial before he asked that his first attorney be replaced, citing his first attorney's motion to withdraw filed on June 22, 2004, which states that he "desired to try this matter before a jury." Even if this ambiguous reference to Jones's desire to try his case before a jury, placed in his counsel's motion to withdraw,[9] can be construed as an assertion of the right to a speedy trial, Jones has not established that this factor weighs in his favor.

In *United States v. Parker*, eight months passed before the defendant's first affirmative indication that he wished to proceed to trial, and another six months passed before he affirmatively asserted his right to a speedy trial. 505 F.3d at 330. The Fifth Circuit held that the defendant was not diligent in asserting his right to speedy trial under those facts. *Id.* Similarly, Jones waited seven months before indicating that he wished to proceed to trial, and another year before affirmatively asserting the right to speedy trial by sending a letter requesting a speedy trial on July 1, 2005.[10]

[8] *See Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993) (twelve months); *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) (twenty-seven months).

[9] The diligence factor requires a showing that the defendant manifested his desire to be tried promptly. *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009); *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007). Thus, an assertion of speedy trial rights generally takes the form of an objection to a continuance or a motion asking to go to trial. *Harris*, 566 F.3d at 432.

[10] The Magistrate Judge mistakenly concluded that Jones's July 1, 2005 letter to the court requesting a speedy trial, his August 5, 2005 motion for a speedy trial, and his September 7, 2005 writ of habeas corpus motion to set aside indictment for failure to afford constitutional right to speedy trial were all "*after* the jury had found him guilty and the State had rested in the punishment

Under *Parker*, Jones did not diligently assert his right to a speedy trial.[11] Thus, the Fourth Court did not err in weighing this factor against Jones.

### 4. Prejudice

The Fourth Court analyzed the final factor of the *Barker* analysis, the question of prejudice, in light of the interests of the defendant that the right to speedy trial was designed to protect, specifically: 1) preventing oppressive pretrial incarceration; 2) minimizing the anxiety and concern of the accused; and 3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The third type of prejudice is the most serious. *Id.* Because prejudice could not be presumed based on the other factors, the Fourth Court appropriately placed the burden of showing actual prejudice on the defendant. *See Molina-Solorio*, 577 F.3d at 307 ("[O]rdinarily the burden is on the defendant to demonstrate actual prejudice.").

The court noted that Jones was incarcerated the entire twenty-three months, and that the length of Jones's incarceration constituted a prima facie showing of oppressive pretrial incarceration.

---

phase of the proceedings." Docket no. 19 at 15. Jones took each of these actions before his trial.

[11] Jones argues that the failure to assert the right should not be counted against him because "[t]he only possible way for a defendant who is incarcerated to seek a trial is by and through his attorney, or filing the proper motions" and he "could not call the judge on the telephone and request a speedy trial, nor could he jump up in the beginning or middle part of his trial and say I want a trial." Objections at 12. Jones also contends that the fact that he did not receive a hearing on his motion for speedy trial until after the verdict is his lawyer's fault because she did not ask for a hearing. While these arguments have some merit, the Court notes that Jones did send a letter to the trial judge in July 2005 asking for a speedy trial, and this demonstrates that he could take steps to try and assert the right even if his counsel did not. In any event, Jones has not demonstrated that he asked his attorney to file a motion before July 2005 and that she failed to do so, or that he pressed her to move for a hearing on the August 5, 2005 motion and that she failed to do so. Simply put, there is no evidence that Jones pressed his speedy trial right before July 2005, and, as the Court has concluded, this demonstrates a lack of diligence.

*Jones*, 2007 WL 246876, at *5. The court further noted, however, that Jones did not address anxiety and concern in any of his pleadings, and did not offer any evidence to the trial court that the delay caused him any "anxiety or concerns beyond the level normally associated with being charged with a felony." *Id.* The court acknowledged that the fact of incarceration alone creates anxiety and distress, but found that Jones did not meet his burden because he failed to provide evidence to support a finding that he experienced anxiety and distress.

The Magistrate Judge concluded that "there was no strong showing of prejudice, the reason for the delay [was] neutral and the assertion of the right weak" and thus the state court's finding of no violation of the right to speedy trial was not contrary to or an unreasonable application of federal law. Jones asserts that it is "absurd" for the court to ask him to present evidence of anxiety or concern, because if "any sane man or woman in this country had a criminal record like that of petitioner's and was facing a habitual indictment on a first degree felony, the anxiety and concern would be as it is to petitioner, unbearable at best, and mind blowing at worst." Objections at 14. Jones contends that he could not do something irrational to demonstrate that he was ready for trial, and also asserts that his filing of numerous pretrial motions (when represented by his initial counsel, who would not file any motions) demonstrates his anxiety and concern. Jones also points out that Soriano testified under oath that his memory would have been better at the time of the incident, and the harm is obvious because the car he described on the night of the robbery is "not the car that he describes at trial."

The Fourth Court considered Jones's anxiety and concern due to his pretrial incarceration, as it was required to do, *Goodrum v. Quarterman*, 547 F.3d 249, 262-63 (5th Cir. 2008), but found it to be minimal. In *United States v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007), the Fifth Circuit

rejected a claim of "oppressive pretrial incarceration" as conclusory and not supported by evidence specifying harm. The Court noted that "[a] lengthy pretrial incarceration does not inherently offend a defendant's liberty interests," and a criminal defendant does not suffer prejudice from the incarceration if the defendant received credit for pretrial incarceration to be applied to his sentence such that the total time spent in prison is not increased by the delay. *Id.* (citing *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984)). Further, "generalized expressions of anxiety and concern amount to little more than a nominal showing of prejudice." *Goodrum*, 547 F.3d at 263. The Fourth Court's conclusion that Jones's prejudice due to anxiety and concern was minimal is not contrary to or an unreasonable application of federal law. *See id.* (noting that petitioner did not demonstrate that the anxiety he felt was of such an extreme degree that it differed in any way from that which would naturally be expected to accompany a defendant's awareness of pending charges, and concluding that generalized anxiety and concern is minimal prejudice).

The Fourth Court rejected Jones's claim that his defense was impaired because he lost access to witnesses who would be expected to testify on his behalf because he did not show that witnesses were unavailable, that their testimony might have been relevant and material, and that he exercised due diligence to locate and produce the witnesses for trial. This is not contrary to or an unreasonable application of federal law. *See id.*; *United States v. Jackson*, 549 F.3d 963, 970 (5th Cir. 2008) (noting that mere speculation of lost witnesses without demonstrating an actual loss of evidence that would have aided the defense and that could not be obtained from other sources was insufficient to demonstrate prejudice).

Further, the Fourth Court concluded that although Jones argued that the delay resulted in a loss of memory for at least one witness (Soriano), he failed to show that lapses in memory were in

some way significant to the outcome of the case, and only pointed to inconsistencies between Soriano's description of the Camaro on the night of the robbery and his description at trial. In *Frye*, 489 F.3d at 213, the Fifth Circuit rejected a petitioner's claim of prejudice based on a witnesses' changed testimony because the witness was not made unavailable, the petitioner was able to adequately prepare his case, and defense counsel thoroughly cross-examined the witnesses, highlighting the alleged modifications and probing the possible explanations for those changes. The Fourth Court concluded that Jones was not prejudiced by alleged faded memories because he only pointed to Soriano's inconsistent statements regarding the description of the Camaro. Soriano, as an eye-witness to the robbery, was a key witness for the State. He provided the description of the getaway vehicle to police on the night of the robbery, describing it as a "mid-80s Chevy Camaro, white in color with spoiler fin on trunk," possibly with chrome wheels. Exhibit A to Jones's state habeas petition. Soriano admitted at trial that his memory had faded somewhat by the passage of time. *See, e.g.* Record Vol. 4 at 19 (when asked if pictures of the Hampton Inn accurately reflected the scene on the night in question, he responded, "I mean, I can't say accurately, because it's been some time, but it's pretty similar."). Though Soriano stated that his memory would have been better if trial had been held earlier, faded memory alone does not demonstrate prejudice; Jones must demonstrate that the faded memory impaired his defense.

Jones asserts that Soriano's description of the car changed between the night of the robbery and trial. At trial, Soriano testified that he heard the screeching of tires outside the hotel's doors and saw what appeared to be a white Camaro with "primer or something" on the left rear fender. *Id.* at 31-32. Soriano was shown a picture of the Camaro in which Jones was apprehended, and testified

that he recognized it. *Id.* at 32. Soriano was shown his statement[12] on the night in question, and stated that his memory was better then than at trial. *Id.* at 37. The car in which Jones was apprehended did not have a spoiler, and when asked about his statement that the getaway car had a spoiler on the trunk, Soriano agreed that it was "something that [he] imposed, given [his] experience with vehicles."[13] *Id.* at 41. Jones's counsel cross-examined Soriano, and he admitted that his statement did not mention primer being on the vehicle, but did state that the car had a spoiler and possibly chrome wheels. *Id.* at 56. He admitted that the car in which Jones was apprehended did not have a spoiler or chrome wheels. *Id.* at 57-58.[14]

Jones has failed to demonstrate prejudice due to the lapse of Soriano's memory. Jones relies on the fact that Soriano's description of the car was different on the night in question, including a spoiler and possible chrome wheels but not mentioning primer. Jarrett cross-examined Soriano about the spoiler and the chrome, and Soriano admitted that these aspects of his description did not match the car in which Jones was apprehended. This testimony aided the defense. With regard to the fact that Soriano's written statement on the night in question did not mention primer on the vehicle, Officer Tim Henry testified that, on the night of the robbery, he "learned that it was an older model Chevy Camaro and it had a gray marking on the back side, one of the back quarter panels of

---

[12] The statement was admitted as State's exhibit 10, but the Court did not locate it in the exhibit volume of the trial court record. It is included as an exhibit to Petitioner's state habeas application, however.

[13] Soriano was a self-described car enthusiast.

[14] The state habeas court concluded in its fact finding, based on Jarrett's affidavit, that Jones's defense was actually aided by the inconsistent statements, apparently on the theory that it diminished Soriano's credibility.

the vehicle" and that he put that description out over the radio. *Id.* at 64. Thus, even if Soriano had not testified at trial about the primer being on the get-away vehicle, which may have been due to a memory lapse, this evidence would still have come in through Officer Henry's testimony. Accordingly, Jones has demonstrated no prejudice based on Soriano's lapse of memory.

**5. Balancing**

Because AEDPA limits review to the reasonableness rather than the correctness of the state court's decision, the Court does not decide the result it would reach if this case had come before it directly. *Goodrum*, 547 F.3d at 266. The Fourth Court concluded that the prejudice to Jones was "minimal" and that, although he was incarcerated for twenty-three months before trial was held, he did not provide evidence of anxiety or distress or show that his defense was impaired. It would not be unreasonable to view the minimal prejudice proven by Jones, combined with the other relevant factors, not to tip the balance enough in Jones's favor so as to establish a violation of the speedy trial right. Accordingly, the state court's denial of Jones's speedy trial claim was not objectively unreasonable.

**D. Ineffective Assistance of Counsel**

In his ineffective assistance of counsel claim, Jones argues that his defense counsel was ineffective in that she failed to obtain a hearing on the speedy trial motion and she failed to cross-examine several witnesses with their prior statements.

To prevail on a claim of ineffective assistance of counsel, a defendant is required to show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced his defense. *Mallard v. Cain*, 515 F.3d 379 (5th Cir. 2008). When evaluating counsel's performance, we measure it against an objective standard of "reasonableness under prevailing professional norms."

*Strickland v. Washington*, 466 U.S. 668, 688 (1984). Analysis under this standard begins with a "strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance," and we must make "every effort ... to eliminate the distorting effect of hindsight." *Id.* at 689. Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694

The state habeas court reviewed the Fourth Court of Appeals' opinion on appeal and the affidavit of Jones's trial counsel. The state habeas court found Jarrett's affidavit to be credible, and based upon the statements therein, found that her representation of Jones did not fall below an objective standard of reasonableness. In addition, the court concluded that Jones did not show that his attorney's performance affected the ultimate outcome of the proceedings. With regard to the speedy trial claim, the court concluded that although the "lack of persistence" conclusion weighed against Jones, it was "clearly not the deciding factor." The court thus concluded that Jones had not shown that there is a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. With regard to the claim that Jarrett failed to adequately cross-examine witnesses, the court found, based on Jarrett's affidavit, that Jones had not met his burden to show that her performance fell below an objective standard of reasonableness or that there is a reasonable probability that, but for the allegedly deficient performance, the result of the proceeding would have been different.

Where the state habeas court had the opportunity to rule on the petitioner's ineffective assistance of counsel claim, "the test for federal habeas purposes is not whether [the petitioner] made [the required] showing." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Instead, the test is whether the state court's decision-that [the petitioner] did not make the *Strickland*-showing-was

26

contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on [the petitioner's] IAC claim." *Id.*; *see also Carty v. Quarterman*, __ F.3d __, 2009 WL 2708112 (5th Cir. 2009).

Jarrett provided a tactical reason for her delay in asserting the right to speedy trial,[15] and the state court reasonably concluded that Jarrett's performance did not fall below an objective standard of reasonableness. Even if she had pressed for a hearing on the August 5, 2005 motion after it was filed or even earlier, Jones has not demonstrated that the motion would likely have been granted, and based on the Court's analysis *supra*, such a result is unlikely. Further, though limited, Jarrett did cross-examine the witnesses, including Soriano regarding the lack of a spoiler or chrome wheels on the car in which Jones was apprehended. While these discrepancies tend to discount the conclusion that the car was the get-away vehicle, the fact that stolen property was found in the vehicle is sufficient to overcome these discrepancies, and thus even more extensive cross-examination on theses issues would have been unlikely to change the outcome. Jones also emphasizes that a money "drawer" was found in the car, but Neri stated that a tray/till was taken. However, Neri identified the tray/till/drawer found in the car as being from the hotel, so it is unlikely that further cross-examination on this issue would have changed the outcome. Jones asserts that an effective cross-examination would have revealed that the officers and witnesses were lying. However, Jones has failed to establish that Jarrett's representation was constitutionally deficient or that, if it was, it affected the outcome of the case. The Court finds that the state court's decision to deny relief on

---

[15] Jones argues that Jarrett received the discovery much earlier. However, he refers to affidavits and interrogatories, while Jarrett states that she was awaiting depositions. In any event, however, Jones has not shown that he would have likely succeeded on a speedy trial motion had Jarrett pursued the issue earlier.

Jones's ineffective assistance of counsel claim is not contrary to or an unreasonable application of the standards for succeeding on petitioner's ineffective assistance of counsel claim.

**E. Motion for Discovery (docket no. 17)**

Jones requests that he be allowed to submit sworn interrogatories to certain witnesses who were "involved in" the case but were not allowed to testify at trial, and argues that this evidence will allow him to aid the court in developing facts necessary to decide whether to hold an evidentiary hearing or grant his application for writ. The Court concludes that such discovery is unwarranted, and denies the motion.

## IV. Conclusion

The Court DENIES petitioner's petition for writ of habeas corpus.

Jones's Motion for Discovery (docket no. 17) is also DENIED.

It is so ORDERED.

SIGNED this 30th day of September, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE